**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CERNER MIDDLE EAST LIMITED, a Cayman Islands Exempted Company, | No. 17-35157 |
| *Plaintiff-Appellant*, | D.C. No. 3:16-cv-05706-RBL |
| v. | |
| BELBADI ENTERPRISES LLC, a U.A.E. Limited Liability Company; VANDEVCO LIMITED, a Washington Corporation, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted October 12, 2018
Portland, Oregon

Filed September 23, 2019

Before: Richard R. Clifton and Consuelo M. Callahan, Circuit Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge Clifton

---

[*] The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Removal / International Arbitration

The panel reversed the district court's order denying plaintiff's motion to remand to state court an action that had been removed to federal court on the basis that it related to an international arbitration award.

9 U.S.C. § 205 authorizes the removal by a defendant of an action previously filed in state court if the action relates to an arbitration agreement or award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The panel concluded that the outcome of this case could not conceivably be affected by an arbitration award arising from a dispute concerning a contract for the development of medical information software. Specifically, the arbitration award could not have preclusive effect over whether certain entities were alter egos or over the amount of damages that certain entities owed to the plaintiff; the factual findings in the arbitration award could not affect the outcome of this case; and the possibility that the district court could find persuasive the legal analysis contained in the arbitration award was insufficient. The panel therefore held that the action did not relate to an arbitration agreement under the Convention. Accordingly, 28 U.S.C. § 205 did not authorize removal of the action to federal court or provide federal subject matter jurisdiction over this case.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's order and remanded with instructions to remand the case to state court.

## COUNSEL

Warren E. Gluck (argued), Samuel Spital, and Stosh Silivos, Holland & Knight LLP, New York, New York; David J. Elkanich and Garrett S. Garfield, Holland & Knight LLP, Portland, Oregon; for Plaintiff-Appellant.

Paul H. Trinchero (argued) and Gary I. Grenley, Garvey Schubert Barer, Portland, Oregon, for Defendants-Appellees.

## OPINION

CLIFTON, Circuit Judge:

This appeal presents questions regarding the removal from state court to federal court of an action that arguably relates to an international arbitration award. Under 9 U.S.C. § 205, a defendant is authorized to remove to federal court an action previously filed in state court that "relates to an arbitration agreement or award falling under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, sometimes described as the "New York Convention." Plaintiff-Appellant Cerner Middle East Limited filed an action in Washington state court against Defendants-Appellees Belbadi Enterprises, LLC and Vandevco Limited. Defendants removed the action to federal district court. Cerner moved to remand it to state court, arguing that the removal was improper and that the federal court lacked subject matter jurisdiction over the action. The

district court denied that motion to remand, holding that it could exercise jurisdiction under 9 U.S.C. § 205.

In our view, this case is not related to an international arbitration agreement or award, as that term is used in the statute, and no other basis for federal jurisdiction has been offered by Defendants. We therefore reverse the district court's denial of Cerner's motion to remand and remand the case to the district court with instructions that it be remanded to the Washington state court.

## I.   Background

This action is one of several disputes between Cerner, on one side, and Ahmed Saeed Mohammad Al Badi Al Dhaheri[1] and entities controlled by Dhaheri, on the other.[2]

Plaintiff Cerner Middle East Limited (which will be identified in this opinion as "Cerner") is a Cayman Islands corporation with its principal place of business in Kansas City, Missouri. It is a subsidiary of Cerner Corporation, a medical services technology company based in Kansas City,

---

[1] As sometimes happens with names translated from another language, Dhaheri's name has been spelled in various ways. We use the spelling used in the brief filed in this appeal on behalf of the corporations affiliated with him.

[2] Another one of those disputes resulted in an appeal from a decision by the U.S. District Court for the District of Oregon, argued to the same panel of this court on the same day. Although there is substantial overlap in the factual background, the issues in the two appeals are distinct and they are resolved in separate opinions. *See Cerner Middle East Limited v. iCapital, LLC*, No. 17-35514, ___ F.3d ____ (9th Cir. 2019).

whose revenue in 2018 was in excess of $5 billion and whose stock is listed on the NASDAQ exchange.

Dhaheri, a businessman with substantial holdings, is a citizen and domiciliary of the United Arab Emirates ("UAE"). He is not a party to the current action, but Cerner alleges that Dhaheri owns and controls Defendant Belbadi Enterprises, LLC, a UAE corporation with its principal place of business in Abu Dhabi, UAE. Cerner further alleges that Belbadi is the owner of Defendant Vandevco Limited, that Vandevco is a Washington corporation with its principal place of business in Vancouver, Washington, and that Vandevco owns, through other entities, the Vancouver Center, a mixed residential and commercial development in Vancouver. Cerner alleges that Vandevco is an alter ego of Belbadi for jurisdictional and liability purposes. Other entities related to Dhaheri that are involved in the history of this dispute, though not parties in this action, include iCapital S/E, a UAE sole proprietorship through which Dhaheri did business, and iCapital, LLC, a UAE limited liability company also owned and controlled by Dhaheri.

The disputes arose from a contract originally entered into between Cerner and iCapital S/E. In 2008, the United Arab Emirates Ministry of Health awarded iCapital S/E a contract to develop medical information software for use in the UAE. iCapital S/E and Cerner signed a contract (the "Cerner Business Agreement" or "CBA") under which Cerner would provide hardware, software, and services for the UAE project. The CBA required the parties to submit any disputes to binding arbitration under the rules of the International Chamber of Commerce ("ICC"), specified that the seat of arbitration shall be in Paris, France, and stated that the language of an arbitration shall be English. The contract also

contained a choice of law clause that stated that it "shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of Missouri[.]"

Cerner filed a request for arbitration with the ICC in September 2012. It contended that iCapital S/E had failed to make payments that were due under the CBA. It also complained that iCapital S/E, a sole proprietorship, had been reorganized into iCapital, LLC, a limited liability company, without Cerner's consent, which Cerner alleged was contrary to the terms of the CBA.

The dispute appeared to have been settled three months later. The settlement divided iCapital's liability into two parts: the amount that iCapital owed Cerner for the work already completed under the CBA (the "Overdue Amount"), and the amount that iCapital would owe Cerner for the future work contemplated by the CBA (the "Future Payments"). The liability of iCapital for the Overdue Amount was addressed in a Settlement and Payment Agreement ("Settlement Agreement") signed by Cerner and iCapital, LLC. It set the amount owed to Cerner for past performance and waived claims for past acts or omissions by the other party and its affiliates and their directors, officers, employees, agents, and representatives. iCapital, LLC agreed to pay Cerner the owed amount by issuing a series of post-dated checks. The liability for Future Payments was addressed in Amendment No. 5 to the CBA, also signed by Cerner and iCapital, LLC. That Amendment "re-schedule[d] the Future Payments owed to Cerner" under the original CBA.

Amendment No. 5 also revised the language of the original CBA's arbitration clause, retaining the elements described above that required the parties to submit any

disputes to binding arbitration under the rules of the ICC, to be conducted in English in Paris.  The Settlement Agreement adopted the arbitration clause set forth in Amendment No. 5 to the CBA, and the choice of law clause set forth in the original CBA.

To induce Cerner to enter the settlement, Belbadi, an entity not previously involved in the transaction, entered into two separate agreements to guarantee the obligations of iCapital, LLC (collectively, the "Guarantees").  In the first agreement, the "Corporate Guarantee," Belbadi guaranteed iCapital's obligation to pay the Overdue Amount.  In the second agreement, the "Corporate Security Guarantee," Belbadi guaranteed iCapital's obligation to make the Future Payments.

Unfortunately, the settlement did not bring a lasting peace.  In August 2013, Cerner initiated with the ICC a second request for arbitration against iCapital, LLC and Dhaheri, contending, among other things, that iCapital, LLC had failed to make payments called for by the Settlement Agreement.   iCapital responded to the notification by objecting to the arbitration.  Dhaheri declined to respond to correspondence from the arbitration administrator.   The International Court of Arbitration of the ICC concluded that the arbitration should proceed against both respondents and appointed a three-member arbitral tribunal ("Tribunal").

That Tribunal issued its award in July 2015 (the "Arbitration Award").  It determined that it had jurisdiction over both iCapital, LLC and Dhaheri personally.  Its Award held both iCapital, LLC and Dhaheri liable to Cerner for more than $62 million in damages.  After the Tribunal ruled in its favor, Cerner filed a series of actions in the United

States that sought to enforce either the Guarantees or the Arbitration Award.

This is one of those actions. It was initiated on July 20, 2016, when Cerner filed a verified complaint in Washington state court naming Belbadi and Vandevco as defendants. Cerner alleged that Belbadi breached the Guarantees and that Vandevco, as Belbadi's alter ego, was equally liable. Cerner sought more than $62 million in damages, plus interest, attorneys' fees, and costs. It also sought attachment of the shares in Vandevco owned by Belbadi. Cerner attached several documents to its complaint, including the Guarantees, the Settlement Agreement, Amendment No. 5 to the CBA, and the Arbitration Award.

Defendants responded by removing the case to federal court. Defendants' notice of removal asserted that the district court could exercise subject matter jurisdiction under 9 U.S.C. § 205, because this case was related to the Arbitration Award.

After removal, the parties filed competing motions. Cerner moved to remand the action to state court, arguing that removal was improper and that the district court lacked federal subject matter jurisdiction. Defendants maintained that the action should be dismissed entirely because Belbadi was not subject to personal jurisdiction for these claims in any Washington court, state or federal.

The district court ruled in favor of Belbadi on both motions. It denied Cerner's motion to remand, concluding that removal of the case to federal court was proper because this case was related to the Arbitration Award. The district court reasoned that the Award could affect the questions of

alter ego liability raised by Cerner's claims.  It then granted Belbadi's motion to dismiss for lack of personal jurisdiction because it held that Belbadi lacked sufficient connections to the State of Washington to subject it to the personal jurisdiction of a court in Washington.

A timely notice of appeal was filed by Cerner.

## II. Discussion

It has famously been observed that "'[j]urisdiction' is a word of many, too many, meanings." *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90 (1998) (quoting *Vanness*).  The arguments of the parties before the district court, repeated here, reflect three distinct forms of jurisdiction.  One is whether a federal court has subject matter jurisdiction over the claims at issue in this case.  Cerner contends that Congress has not authorized the federal courts to exercise jurisdiction over these claims and asserts that we should direct the district court to remand this case to state court.  In addition, Cerner argues that the case that it initially filed in state court was not properly removed to federal court, contending that the district court lacked a second form of jurisdiction, namely removal jurisdiction, separate from and in addition to lacking federal subject matter jurisdiction.[3]

---

[3] Although it is not clear that proper removal is actually "jurisdictional" in the more traditional sense, *see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996) (holding that the "fail[ure] to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered"), the term "removal jurisdiction" is often used.  *See, e.g.*, *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 642–44 (2006).

Belbadi, on the other hand, argues that it is not subject to the jurisdiction of any court in Washington because the claims are not connected to Washington and because Belbadi does not have sufficient contacts with that state to permit a court in that state to exercise jurisdiction over it.  It therefore contends that we should affirm the district court's order dismissing the case for lack of personal jurisdiction.

Reviewing de novo, *see Providence Health Plan v. McDowell*, 385 F.3d 1168, 1171 (9th Cir. 2004), we conclude that the district court erred in denying Cerner's motion to remand because the case was not properly removed to federal court and the federal courts lack federal subject matter jurisdiction over this case.  We do not reach the issue of personal jurisdiction and leave that issue for the state court following remand.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999).

As noted above, 9 U.S.C. § 205 authorizes the removal by a defendant of an action previously filed in state court if the action relates to an arbitration agreement or award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, the New York Convention.  It is part of a set of statutes pertaining to that Convention, 9 U.S.C. §§ 201–208.  Section 205 states that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention," a defendant may "remove such action or proceeding to the district court of the United States for the

district and division embracing the place where the action or proceeding is pending."**[4]**

Defendants contend that section 205 both authorized the removal of this action to federal court and provides for the federal subject matter jurisdiction necessary for federal courts to exercise authority over it.**[5]**  The key question is whether

---

**[4]** Section 205 provides, in full:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205.

**[5]** A different statute within the same chapter, 9 U.S.C. § 203, speaks more explicitly to federal subject matter jurisdiction: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  Defendants do not argue that section 203 applies to provide federal subject matter jurisdiction over this action, but they contend that section 205 independently grants federal jurisdiction.

this case falls within section 205—whether it "relates to an arbitration agreement or award falling under the Convention."

We discussed the meaning of that provision in *Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133 (9th Cir. 2011), where we held that an action was properly removed if the agreement or award "could *conceivably* affect the outcome of the plaintiff's case." *Id.* at 1138 (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)) (emphasis in original). We described the phrase "relates to" as "plainly broad," and interpreted it accordingly. *Id.* In *Infuturia*, we concluded that the standard was met because the defendant "relie[d] on the affirmative defense of collateral estoppel regarding issues already resolved against the plaintiff in arbitration." *Id.*

We apply that standard, but it leads us to a different result in this case. Defendants offer three arguments as to how the outcome of this case could conceivably be affected by the Arbitration Award, but we have not been persuaded. As a result, we conclude that Section 205 did not provide a proper basis for removal or for federal subject matter jurisdiction over this action.**[6]**

First, Defendants contend that, as in *Infuturia*, the Arbitration Award could have preclusive effect over two issues: (1) whether Belbadi, Vandevco, and Dhaheri are alter egos, and (2) the amount of damages that Belbadi and Vandevco owe Cerner. The arbitration involved a different set of entities, however. The respondents named in the arbitration were iCapital, LLC and Dhaheri. The defendants

---

**[6]** We therefore do not reach the issue of whether section 205 provides a basis in addition to section 203 for federal subject matter jurisdiction.

in this action are Belbadi and Vandevco.  The Arbitration Award addressed the issue of whether iCapital, LLC and Dhaheri are alter egos.  Cerner's complaint, in contrast, alleges that Belbadi, its subsidiary Vandevco, and Dhaheri are alter egos.  The Arbitration Award cannot have preclusive effect over those allegations.  *See generally Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 395 n.5 (9th Cir. 1995) (applying Washington law) (collateral estoppel only applies if the issues raised in two different cases are "identical").

Similarly, the Arbitration Award did not determine the amount of damages that Belbadi and Vandevco may owe Cerner.  Under the Guarantees, Belbadi is liable for the entire Overdue Amount and all of the Future Payments, offset by any payments made by iCapital.  Belbadi was not a party to the arbitration and its liability was not adjudicated or calculated in the Arbitration Award.  Because the Arbitration Award did not resolve those issues, collateral estoppel does not apply.  *See id*.  Cerner concedes that it will have to prove its claims without relying on the Arbitration Award.

Second, Defendants contend that the factual findings in the Arbitration Award could affect the outcome of this case. Those findings would be inadmissible if and when this case proceeds to a factual adjudication.  *See generally United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011) (a prior judgment is hearsay if offered to prove the truth of matters asserted in the judgment).  If the complaint is challenged prior to a factual adjudication, as in the context of a motion to dismiss, it is the facts alleged that would be at issue and Cerner could allege the same facts in its complaint without citing the Arbitration Award at all.  The Award itself will not establish the sufficiency or viability of Cerner's claims.  It is

true that Cerner attached the Arbitration Award as an exhibit to its complaint, among other documents, but Cerner could have alleged the same facts in its complaint without citing the Arbitration Award at all.  In any event, the Award never mentions Vandevco.  From our review it appears that the Award adds nothing meaningful to the detailed alter ego allegations already contained in the complaint, allegations that apply to the relevant Defendants, Belbadi and Vandevco.

Third, Defendants assert that the court could find the legal analysis contained in the Arbitration Award "persuasive," even if it lacked preclusive effect. The "relates to" and "conceivably affect" standard may be broad, but it is not limitless.  The possibility that some discussion in the Award might conceivably be perceived as persuasive—just as a law review article might be persuasive—cannot be enough by itself, unless there is something unique about the Award being the source of the analysis.  The notion that the legal analysis of a tribunal of three arbitrators, from France, Jordan, and Ireland, would actually affect the decision of a federal or state trial court on the claims made in this action is not realistic.  Defendants do not point to specific legal conclusions in the Award that will plausibly impact the ultimate adjudication of the claims in this action.  The Arbitration Award would not be controlling as to these Defendants, and it would not affect the court's obligation to correctly interpret controlling law.  *See Goel v. Ramachandran*, 823 F. Supp. 2d 206, 216 (S.D.N.Y. 2011) (action not related to arbitration proceedings even if those proceedings "determine[d] some issues that would also be relevant to [the case]").

## III.    Conclusion

In sum, we conclude that the current action does not "relate[] to an arbitration agreement or award," as that term is used in section 205. That section did not authorize removal of this action to federal court or provide federal subject matter jurisdiction over this case. We reverse the district court's denial of Cerner's motion to remand and remand this case with instructions for the district court to remand this case to Washington state court.

**REVERSED and REMANDED for further proceedings.**